UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH

In re:

CASALE MARBLE IMPORTS, INC.

Debtor.
_______________________________/

Case No. 13-21220-EPK
Chapter 11

**MOTION TO PROHIBIT USE OF CASH COLLATERAL**

**COMES NOW**, PNC Bank, NA, as successor in interest to RBC Bank (USA) ("Lender") and pursuant to 11 U.S.C. § 363(e) files this motion to prohibit the use, sale, or lease of cash collateral by Debtor Casale Marble Imports, Inc. (the "Debtor"). In support, Lender states as follows:

**JURISDICTION AND VENUE**

1. On May 14, 2013 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11, United States Code, 11 U.S.C. §§ 101 *et. seq*. (the "Bankruptcy Code").

2. Since the Petition Date, the Debtor has remained in possession of its assets and has continued to operate its business as a debtor-in-possession.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

**BACKGROUND**

5. This is the Debtor's second chapter 11 case. On July 14, 2008, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On August

26, 2010, with Lender's consent and support, the Debtor confirmed a chapter 11 plan of reorganization which provided for a restructuring of Debtor's obligations to Lender (the "2010 Plan").

6. According to the 2010 Plan, that certain Promissory Note dated March 8, 2005, that certain Consolidated Renewal Promissory Note dated October 1, 2010, and that certain Cross-Collateralization and Cross-Default Agreement dated January 11, 2011, Debtor is indebted to Lender in an amount in excess of $8,000,000.00 (the "Indebtedness").

7. The 2010 Plan also provided for payments totaling $810,000.00 to be made to general unsecured creditors.

8. Pursuant to that certain Commercial Security Agreement dated March 8, 2005, that certain Commercial Security Agreement dated January 20, 2006, and that certain Commercial Security Agreement dated January 4, 2007, the Debtor pledged all inventory, chattel paper, accounts, equipment, general intangibles, furniture, and fixtures and all proceeds thereof, to secure the Indebtedness (the "Business Collateral").

9. To perfect its security interests in the Business Collateral, the Lender filed UCC-1 financing statement with the Secretary of State, State of Florida, bearing file number 200509251658, and recorded a UCC-1 financing statement in Official Records Book 18315, Page 1699, of the Public Records in and for Palm Beach County, Florida, which statements were continued by that certain UCC-3 financing statement, filed with the Secretary of State, State of Florida, bearing file number 201308977830 and recorded

in Official Records Book 26012, Page 1786 of the Public Records in and for Palm Beach County, Florida.

10. To further perfect its security interests in certain specific equipment of the Business Collateral, and any proceeds, or proceeds of accounts, related to that equipment, the Lender filed another UCC-1 financing statement with the Secretary of State, State of Florida, bearing file number 200706496831, which statement was continued by that certain UCC-3 financing statement filed with the Secretary of State, State of Florida, bearing file number 20120722599X.

11. Pursuant to the above, the Lender holds a valid, first priority security interest in all of the Business Collateral, which includes but is not limited to Debtor's cash, accounts, chattel paper, and other cash equivalents (the "Cash Collateral").

12. The Debtor, however, defaulted on its restructured obligations to Lender by, *inter alia*, failing to make payments due on March 1, 2012, and all payments due thereafter.

13. It also appears that the Debtor has not made a single payment to any of its unsecured creditors under the 2010 Plan.

14. Since the Petition Date, the Debtor has filed an Expedited Motion for Authority to Pay or Honor Pre-Petition Obligations to Certain Critical Vendors (Dkt. No. 6) and an Expedited Motion to Allow the Negotiation of Pre-Petition Checks (Dkt. No. 7). The Debtor has not, however, filed any motion to authorize use of cash collateral even though these requests by necessity implicate the use of the Cash Collateral. As the Lender holds a security interest in all of the Debtor's assets, including the Business

Collateral, it is improbable that the Debtor has access to any funds which are not Lender's Cash Collateral.

15. It is also unclear whether, since the Petition Date, the Debtor has used or transferred any cash collateral.

16. Lender has not given its consent to any use of the Cash Collateral.

**BASIS FOR RELIEF**

17. Section 363(a) defines cash collateral as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired . . . and includes the proceeds, products, offspring, rents, or profits of property . . . whether existing before or after the commencement of a case under this title."

18. Section 363(c)(2) provides that a debtor "may not use, sell, or lease cash collateral . . . unless (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."

19. Section 363(e) provides that upon request of an entity that has an interest in property to be used by a debtor, the court "shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."

20. Section 363(p)(1) provides that the Debtor has the burden of proof on the issue of adequate protection.

21. A debtor attempting to reorganize a business under Chapter 11 has a need to use "cash collateral" in its effort to rebuild. However, "[o]pposed to the debtor's need for use of cash collateral is the valid concern that free use of secured 'property' may result

in the dissipation of the estate." *In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017, 1019 (11th Cir. 1984).

22. "Thus, when a creditor opposes a proposed use of cash collateral, the guiding inquiry is whether its security interests are 'adequately protected' absent the additional protection that the cash collateral would provide." *Id.*

23. "Adequate protection is designed to assure that a secured creditor does not suffer a decline in the value of its interest in the estate's property while the automatic stay remains in effect." *In re Wrecclesham Grange, Inc.*, 221 B.R. 978, 981 (Bankr. M.D. Fla. 1997). "The rationale is that the protected cash proceeds are being used to generate new collateral which will be of at least equivalent value of those replaced." *Id.*

24. In this case, however, even the Debtor has admitted that it must liquidate. The Debtor is in default under the 2010 Plan and other obligations for some time, it has not made a single payment to Lender in over one year, and it has never made any payments to unsecureds under the 2010 Plan. Its business model, even as reorganized under the 2010 Plan, has failed, and this case does not have a reasonable possibility of reorganization.

25. Use of the Cash Collateral, even if properly requested by the Debtor, should be denied and this case either converted to chapter 7 or dismissed.

**WHEREFORE**, Lender respectfully requests that this Court enter an order barring and prohibiting the Debtor from any further use, sale, or lease of the Cash Collateral, together with any further relief this Court deems just and proper.

Dated this 16th day of May, 2013.

Respectfully submitted,

*/s/ Michael A. Nardella*

Michael A. Nardella, Esquire
Florida Bar Number: 51265
**BURR & FORMAN LLP**
200 S. Orange Avenue, Suite 800
Orlando, Florida 32801
Phone: (407) 540-6600
Fax: (407) 540-6601
E-mail: ddpowell@burr.com
**ATTORNEYS FOR**
**PNC BANK, NATIONAL**
**ASSOCIATION**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 16, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served on May 16, 2013 by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case and/or U.S. Mail, postage prepaid, to the following: Debtor: Casale Marble Imports, Inc., 750 SW 17th Avenue, Delray Beach, FL 33444; Debtor's Counsel: Brett A. Elam, Esquire, 105 S. Narcissus Avenue #802, West Palm Beach, FL 33401; U.S. Trustee, Office of the U.S. Trustee, 51 S.W. 1st Avenue, Suite 1204, Miami, FL 33130.

*/s/ Michael A. Nardella*
Michael A. Nardella, Esquire