**ORDERED in the Southern District of Florida on June 27, 2013.**

**Paul G. Hyman, Chief Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
*West Palm Beach Division*
www.flsb.uscourts.gov

**In re:**

**CASALE MARBLE IMPORTS, INC.,**

**Debtor.**
______________________________/

**Case No. 13-21220-PGH**
**Chapter 11 Case**

**ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL AND (II) GRANTING ADEQUATE PROTECTION**

**THIS MATTER** came before the Court on May 31, 2013, at 1:00 p.m. upon the *Debtor's Motion for Order (A) Authorizing the Debtor's Continued Use of Cash Collateral Pursuant to 11 U.S.C. § 363, and Providing Adequate Protection in Connection Therewith Pursuant to 11 U.S.C. § 361* (the "Cash Collateral Motion") (D.E. [redacted] 36). (P.H.)

Based on the evidence presented, the arguments of counsel on the record, and the entire record before the Court, the Court



184871 V3

**ORDERS** as follows:

A. The Cash Collateral Motion is **GRANTED** subject to the terms and conditions contained in this Order.

**Section 1. Use of Cash Collateral; Budget.** Subject to the terms and conditions of this Order, the Debtor is authorized to use PNC's Cash Collateral through July 10, 2013 (the "Termination Date") to pay the ordinary and necessary operating expenses of its business in the amounts and solely for the purposes set forth in the Budget. With respect to inventory which is subject to PNC's security interest (the "PNC Inventory"), Debtor is permitted to use the inventory outlined on the attached **Exhibit "1"**. To the extent that Debtor uses any other PNC Inventory, Debtor shall provide written notice to PNC and shall pay PNC the value of the inventory at cost as reflected on the books and records of the Debtor.

**Section 1.1. Extension of Agreement.** The time period set forth in the preceding paragraph shall not be extended without an Order of this Court.

**Section 1.2. Budget Variations.** Without prior approval of PNC, the Debtor is permitted to use Cash Collateral for a particular line item in the Budget so long as: (a) such variation is equal to or less than a 10% increase in the amount listed in the Budget for such line item and (b) the total amount incurred during such applicable period does not increase.

**Section 1.3. Prohibited Uses of Cash Collateral.** Notwithstanding the items listed in the Budget, absent written consent of PNC or an Order of the Court, the Debtor shall not use the Cash Collateral: (a) to make any prepayments with respect to services which were not yet rendered, goods that have not been received, or any other

item for which payment is not currently due, (b) to pay any increases in salaries or compensation for employees, other than increases in the normal course of business, or (c) to pay any part or portion of pre-petition claims (other than pre-petition wage claims as approved and Ordered by the Court) (the "Prohibited Uses").

**Section 2. Replacement Liens, Additional Liens, and Super-Priority Administrative Claim.**

**Section 2.1. Replacement Liens.** As adequate protection for its interest in PNC's Cash Collateral, the Debtor grants PNC, effective as of the petition date valid and effective replacement security interests in and liens (the "Replacement Liens") on all property of the Debtor to the same extent, and with the same priority, as the liens held by PNC on property of the Debtor as of the Petition Date (such collateral, collectively, with the proceeds and products of any and all of the foregoing, the "PNC Replacement Collateral"). No lien or security interest in any property of the Debtor granted or arising on or after the Petition Date shall be created or permitted to be pari passu with, or senior to, the liens and security interests of PNC in its prepetition collateral or the Replacement Liens. The grant of Replacement Liens hereunder shall be supplemental to the security interests and liens which PNC possesses pursuant to the Loan Documents.

**Section 2.2. Perfection of Replacement Liens.** The liens and security interests granted herein to PNC upon the PNC Replacement Collateral shall be deemed attached, perfected, and enforceable against the Debtor and all other persons including without limitation any subsequent Trustee (if appointed under Chapter 7 of the Bankruptcy Code), without the filing of any financing statements or other

compliance with non-bankruptcy law. The Debtor shall, however, at PNC's request, execute and deliver any and all documents permitting such security interests to be filed or recorded with any appropriate agency or official. Any such filing or recording shall be deemed to have been filed or recorded on the date of the entry of this Order.

**Section 2.3. Additional Lien.** As additional adequate protection for its interest in PNC Collateral to the extent of any diminution in the value of PNC's Cash Collateral as of May 14, 2013 PNC is granted a security interest and liens (the "Additional Liens") in and to all of its assets whether owned or existing as of the Petition Date or thereafter acquired or arising, and all proceeds, products, rents, revenues, or profits of such property, other than causes of action arising under 11 U.S.C. § 542 *et seq*. The Additional Liens shall be subject only to the liens, security interest, and assignments that were valid and perfected as of the Petition Date and shall be in addition to any security interests, liens, or rights of set-off existing in favor or PNC on the Petition Date. The Additional Liens shall be deemed attached, perfected, and enforceable against the Debtor and all other persons, including without limitation, any subsequent Debtor (if appointed under Chapter 7 of the Bankruptcy Code), without the filing of any financing statements or other compliance with non-bankruptcy law. The Debtor shall, however, at PNC's request, execute and deliver any and all documents permitting such security interests to be filed or recorded with any appropriate agency or official. Any such filing or recording shall be deemed to have been filed or recorded on the date of the entry of this Order.

**Section 2.4 Adequate Protection Payments**. As further adequate protection for PNC for the diminution in the Cash Collateral resulting by and through Debtor's use thereof, upon the entry of the this Order, the Debtor shall pay to PNC seventy (70%) percent of its excess cash on hand, and the Debtor shall, by the 5th day of July, 2013, pay to PNC seventy (70%) percent of its excess cash for the prior respective month at month end. These payments shall be applied by PNC against the principal balance due and owing to PNC from the Debtor. If PNC is later determined to be in an over-secured position with regard to its loans to the Debtor and the value of the collateral securing those loans, PNC retains the right to seek a reallocation of monies received to be applied to interest and other charges due on the loans.

**Section 2.5. Administrative Expense.** As further adequate protection for PNC for the extent of the use of Cash Collateral, PNC shall have *nunc pro tunc* as of the petition date an administrative expense claim pursuant to Sections 507(a)(2) and 503(b) of the Bankruptcy Code for the diminution in the Cash Collateral resulting by and through the Debtor's use thereof, subject to the payments to be made to PNC and described above in paragraph 4.4, a carve-out for United States Trustee fees and Court costs.

**Section 3. Covenants.** As adequate protection for the use of PNC Collateral and the Cash Collateral, the Debtor agrees to fulfill or obey, as applicable, the following covenants.

**Section 3.1. Reporting.**

**A. Weekly Reports.** The Debtor shall provide to PNC no later than on Tuesday of each week (a) a report covering the preceding week ended Friday

formatted as the Budget is formatted reporting actual receipts and expenditures as compared to the budgeted receipts and expenditures; (b) a report reflecting the aging of the Debtor's accounts receivable, specifying the account debtor and balances owed; and (c) any other reports required under the terms of the Loan Documents including, but not limited to, a Borrowing Base Certificate. In addition, the Debtor shall provide the Audit and monthly and quarterly financial statements as required under the Loan Documents.

**B. DIP Reports.** The Debtor shall provide PNC copies of any reports provided to the Office of the United States Trustee (the "U.S. Trustee") at the time such reports are filed with the Court in the Bankruptcy Case. If these reports contain information required under subpart A of this subsection, they may be provided in lieu thereof.

**Section 3.2. Access/Inspection.** The Debtor shall permit any authorized representatives of PNC from time to time, upon 24 hours notice to the Debtor, and during normal business hours, to examine and copy all the records and books of, and visit and inspect the business premises of the Debtor and/or to appraise the collateral of PNC at PNC's initial cost and expense but which costs and expenses, but PNC reserves the right to seek to add to the balance of the debt owed to PNC by Debtor. The Debtor shall also provide PNC with all documents and disclosures as required by the Loan Documents.

**Section 3.3. Insurance.** The Debtor shall procure and maintain such insurance as required by the U.S. Trustee. Any such insurance shall at all times name PNC as a

loss-payee or additional-insured and the Debtor shall furnish evidence of such insurance promptly to PNC upon request.

**Section 4. No Waiver.** Nothing in this Order or in any other document or instrument contemplated to be delivered in connection herewith shall in any way be deemed or construed in any manner to affect, impair, or diminish any rights PNC may have against any party obligated to PNC that is not a Debtor.

**Section 5. Termination.** The Debtor shall cease to use the Cash Collateral upon the occurrence of the Termination Date (as defined below), and shall not be permitted further use of Cash Collateral unless a further Order of this Court extending the Termination Date has been entered.

**Section 6. No Agencies, Partnership or Joint Venture.** Nothing in this Order shall be deemed or construed as in any way creating a relationship, including, without limitation, agency, partnership, joint venture or any other similar relationship, between PNC and any of the other parties hereto of any nature other than judgment creditor, judgment debtor, PNC, borrower, hypothecator and guarantor. The Debtor is not the agent, partner, or representative of PNC, and PNC is not the agent, partner or representative of the Debtor, and nothing in this Order or any of the documents contemplated to be executed in connection herewith shall be construed to make PNC liable to anyone for goods delivered or services performed or debts or claims accruing against the Debtor's bankruptcy estate.

**Section 7. No Waiver; Cumulative Remedies.** No failure on the part of either of PNC or the Debtor to exercise, and no delay in exercising, any right granted hereunder or in any of the documents evidencing PNC's Claims or applicable law

shall operate as a waiver thereof, nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. The remedies provided herein are cumulative and may be exercised alternatively, simultaneously, successively or in any other manner as PNC in its sole discretion shall see fit, and such remedies and are not exclusive of any remedies provided by law.

**Section 8. Additional Documents: Further Assurances.** The Debtor and PNC shall deliver any and all other instruments and documents, and shall do, and cause to be done, all such additional acts and things, as are reasonably necessary to and proper in order to give effect to, all of the terms and provisions of this Order.

**Section 9. Severability.** In the event any one or more of the words, phrases, sentences, clauses, sections or subsections contained in this Order or any part hereof, all of which are inserted conditionally on their being valid in law, shall be declared invalid, this Order shall be construed as if such word or words, phrase or phrases, sentence or sentences, section or sections, or subsection or subsections, had not been inserted.

**Section 10. Section Headings.** The section and other headings contained in this Order are for reference purposes only and shall not affect the meaning or interpretation of this Order.

**Section 11. Successors and Assigns.** This Order shall be binding upon the Debtor, its respective employees, agents and successors as applicable. This Order shall inure to the benefit of PNC's respective officers, directors, employees, agents, executors, administrators, predecessors, successors and assigns. The rights, duties, covenants

and obligations of the Debtor hereunder shall not be assigned, delegated or transferred to any other person or entity. PNC shall be free to assign, transfer and delegate its rights, duties, and obligations hereunder. PNC's successors and assigns shall have all of its rights and remedies.

**Section 12. Time of Essence.** Time is of the essence under this Order and each of the transactions contemplated to be consummated hereunder.

**Section 13. Modifications.** This Order may not be amended or modified in any way except by a written instrument executed by all of the parties hereto, or by further of the Court.

###

Order submitted by:
Brett A. Elam, Esq.
Brett A. Elam, P.A.
*Counsel for Debtor*
105 S. Narcissus Ave., #802
West Palm Beach, FL 33401
Telephone: (561) 833-1113
Facsimile: (561) 833-1115
E-mail: belam@brettelamlaw.com
Florida Bar No.: 576808

Copies provided to:
Brett A. Elam, Esq. (Proposed Counsel for Debtor)
Denise D. Dell-Powell, Esq. (Counsel for PNC Bank, National Association)

Brett A. Elam, Esq. is directed to immediately serve a conformed copy of this Order and to file a Certificate of Service evidencing same.

# Casale Marble Imports, Inc. - Work - In - Progress
## Case #: 13-21220-BKC-EPK

| Customer Name | Job/Project Name | Effect on PNC's Inventory | Future effect on A/R if jobs are completed | Net effect on PNC's Collateral +/- | Balance in A/R as of Filing Date | Customer paid this amount on the project as of Filing Date |
|---|---|---|---|---|---|---|
| HITT Contracting Inc. | Hogan Lovell - 5009T | $ - | $ 34,566.00 | $ 34,566.00 | $ 25,261.00 | $ 227,348.60 |
| HITT Contracting Inc. | Univision - 5050F | $ - | $ 95,879.64 | $ 95,879.64 | $ 54,521.96 | $ - |
| B&M Building Co. | Meehan Resd. - 5249T | $ - | $ 6,049.25 | $ 6,049.25 | | |
| B&M Building Co. | Meehan Resd. - 5249F | $ - | $ 21,966.15 | $ 21,966.15 | $ 53,623.45 | $ 28,065.25 |
| Itasca Construction | Riviera Point - 5047T | $ (1,032.12) | $ 5,200.00 | $ 4,167.88 | $ - | |
| BRANG Construction | Federico Resd. - 5045 | $ - | $ 29,541.20 | $ 29,541.20 | $ - | $ 42,988.96 |
| Mark Timothy | Carney Resd. - 5621 | $ - | $ 88,596.00 | $ 88,596.00 | $ 13,904.00 | $ - |
| Mark Timothy | Malfitano Resd. - 5244 | $ - | $ 2,028.00 | $ 2,028.00 | $ 25,642.00 | $ 30,156.00 |
| Mark Timothy | Leeds - 5079 | $ - | $ 14,433.00 | $ 14,433.00 | $ 11,571.00 | $ 170,969.81 |
| Mark Timothy | Wheeler - 5267 | $ - | $ 53,768.37 | $ 53,768.37 | $ - | $ - |
| Robelen & Associates | Caine Resd. - 5017 | $ (1,832.12) | $ 8,105.00 | $ 6,272.88 | $ 6,475.00 | $ 55,062.93 |
| NMB Custom Homes & Renovations | Hodkin - 5616 | $ - | $ 11,743.06 | $ 11,743.06 | $ - | $ 2,086.09 |
| MINTO - Olympia | Lots:P1677, P1696, P1674,P1673, P1667,P1679,P1690, P1691,P1685 | $ (3,182.54) | $ 31,067.00 | $ 27,884.46 | $ 8,148.00 | On Going since 10/5/2012 |
| MINTO - Cascada | Lots:28-01, 01-04, 12-01, 12-02, 12-03, 12-04, 12-05, 03-01, 03-02, 04-01, 04-02, 04-03, 04-04, 03-03, 03-04 | $ (790.03) | $ 26,988.00 | $ 26,197.97 | $ 2,667.00 | On Going since 4/25/2012 |
| MINTO - Boca Reserve | Lots: 17, 30 | $ - | $ 11,486.00 | $ 11,486.00 | $ 18,193.00 | On Going since 9/6/2012 |
| MINTO - Porto Sol | Lots: 133, 198, 130, 578 | $ (4,110.84) | $ 9,840.00 | $ 5,729.16 | $ 18,193.00 | On Going since 10/5/2012 |
| MINTO - Town Park | Lots: 302 | $ - | $ 2,673.00 | $ 2,673.00 | $ 9,032.00 | On Going since 10/5/2012 |
| Centerline Homes - Riverwalk | Bldg 5 -Lots 21, 22, 23, 24, 25 | $ (988.00) | $ 45,768.00 | $ 44,780.00 | $ 3,588.00 | $ 8,615.00 |
| | | $ (11,935.65) | $ 499,697.67 | $ 487,762.02 | $ 250,819.41 | |

Estimated June payment to PNC - $25,091 (but may be more)